The prisoner was indicted at the Circuit Court of Henrico, in April, 1811, for the malicious stabbing of a slave. She was found guilty by the jury, and she moved to arrest the judgment on the ground “that the person charged in the indictment as stabbed is a slave, as appears by the said indictment.”
The matter of law arising on this motion was, with the consent of the prisoner, adjourned to the general court for its opinion on this point, “whether an indictment for the malicious stabbing a slave, can be supported under the third section of the act passed the 28th January, 1803, intituled ‘an act to amend the laws heretofore made, amendingthe penal laws of this commonwealth,’ that being the act under which the said Dolly Chappie was indicted.”
Note. The doubt in this case arose from the provision that a part of the punishment to be inflicted on the person stabbing is a fine, whereof three-fourths are to be for the use of the party grieved. It was contended that as a slave could not legally hold property, no part of the fine could go to him, and therefore the legislature could not 185 *be supposed to include the offence of stabbing when perpetrated against -a slave. On the other hand it was argued for the commonwealth, that there is nothing in the law which shews clearly that an injury to a slave was not intended to be made punishable : that there were no words of exclusion, or exception, and that a slave in this country has been frequently decided to be legally and technically a person, on whom a wrong can be inflicted; that the giving a portion of the fine to the party grieved was intended to benefit him, and that his incapacity to take, ought not to skreen the prisoner from punishment: that femes covert could not take the fine, and it would be monstrous to contend that the act did not include injuries to them: and that there was no difficulty in rendering judg-' ment against the accused for the whole fine assessed by the jury, although the person grieved might not be able to obtain his portion.
It was also argued, that as the 4th section of the law provided that the person grieved shall be a competent witness, if the act could be construed to extend to mayhems committed on slaves, they might be introduced as witnesses against free white people. To this it was answered, that the 4th section only intended to render those persons competent who would have been rendered incompetent in consequence of their interest in the fine, and was in fact enacted because a per-186 son maimed, and *who was entitled to a part of the fine under the act of 1796, had been decided by the district courts to be an incompetent witness : that this 4th section did not intend to make a person, who was incompetent from any other cause than his *51 interest in the fine, (as a person convicted of perjury, &c.), a competent witness.
The general court, composed of the same members as in the last case, June 13, 1811, decided unanimously “that an indictment for the malicious stabbing of a slave can be supported under the third section of the act passed the 28th of January, 1803, intituled, ‘an act to amend the laws heretofore made amending the penal laws of this commonwealth. ’ ”